1   Sean A. Commons
    scommons@sidley.com
2   SIDLEY AUSTIN LLP
    350 South Grand Avenue
3   Los Angeles, CA 90071
    Telephone: (213) 896-6010
4   Facsimile: (213) 896-6600

5   *Attorneys for Plaintiff*
    *The Honest Company, Inc.*
6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  THE HONEST COMPANY, INC.,          Case No. 2:25-cv-10629

12              Plaintiff,              **COMPLAINT**

13       v.

14  BUTTERBLU, LLC,                     **DEMAND FOR JURY TRIAL**

15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

                              COMPLAINT

1    Plaintiff The Honest Company, Inc. ("Plaintiff") hereby sues Butterblu, LLC

2  ("Defendant") and, upon information, belief, and investigation, alleges as follows:

3                              **INTRODUCTION**

4       1.     Plaintiff is a personal care company dedicated to creating cleanly-

5  formulated and sustainably-designed products for conscious consumers.  Plaintiff

6  has become one of the market leaders in the diapers and wipes, skin and personal

7  care, and household and wellness categories.  Its brand has resonated with

8  consumers who are focused on products that promote their health, families, and

9  homes.

10      2.     In 2019, Plaintiff and Defendant were parties to a licensing agreement

11  by which Defendant could leverage Plaintiff's renowned and valuable trademarks

12  and other intellectual property on infant and toddler apparel, bedding, and towels.

13  The licensing model under that agreement proved unworkable.  In 2022, the Parties

14  began to explore a new arrangement by which Defendant would market and sell

15  Honest Baby Clothing® branded apparel, bedding, and towels (the "Products").

16      3.     In August 2022, the Parties entered a new agreement by which Honest

17  took over ownership of all Products in inventory, and by which Defendant

18  thereafter sourced, marketed, and sold the Products in exchange for a service fee.

19  Under this new service provider agreement, Honest held title to all such Products

20  and was to exercise greater control over the sourcing, marketing, and sale of such

21  infant and toddler apparel, bedding, and towels.

22      4.     Unfortunately, Defendant did not abide by the terms of the Parties'

23  new services agreement.  As more fully described below, Defendant has failed to

24  live up to the obligations and terms of the Parties' services agreement (as

25  amended), including by, among other things, failing to obtain Plaintiff's approval

26  before purchasing Products from suppliers, failing to share information with

27  Plaintiff as required by the contract (and concomitant with Plaintiff's rights as

28  owner of the Products), failing to follow Plaintiff's directions on pricing the

1  Products, and failing to use best efforts to promote and sell the Products while

2  maintaining the value and good will of the Honest® brand.

3    5. As a result, Plaintiff terminated the services agreement on November

4  5, 2025.  Plaintiff now brings this action seeking a declaration of rights under the

5  services agreement, relief for Defendant's breaches of the agreement, and relief for

6  other wrongdoing engaged in by Defendant.

7  **THE PARTIES**

8    6. Plaintiff The Honest Company, Inc. is a Delaware corporation with its

9  principal place of business located at 12130 Millennium Drive, #500, Los Angeles,

10  California 90094.

11    7. Defendant Butterblu, LLC is a limited liability company with its

12  principal place of business located at 5 Pony Lane, Westport, CT 06880.  Defendant

13  does not appear to be registered with the California Secretary of State to conduct

14  business in California.  Upon information and belief, none of Defendant's members

15  is a citizen of the state of California or Delaware.

16  **JURISDICTION AND VENUE**

17    8. This Court has original jurisdiction under 28 U.S.C. § 1332 because

18  the matter in controversy exceeds the sum or value of $75,000 exclusive of interest

19  and costs, and the Parties are citizens of different states.

20    9. This Court has personal jurisdiction over Defendant.  Defendant

21  purposely availed itself of California because Defendant transacts and does

22  business within this judicial district, the claims at issue arise from conduct in this

23  district, and the Parties entered into the agreements at issue in this district.  In

24  addition, the Parties' services agreement expressly provides that all disputes are to

25  be resolved in this district.

26    10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the

27  injury in this case substantially occurred in this district, and the Parties have agreed

28  by contract to this venue.

- 2 -

COMPLAINT

1                                    **NATURE OF ACTION**

2          **A.    Background**

3          11.    On July 19, 2019, Defendant's predecessor (and parent company)

4    entered into a "License Agreement" with Plaintiff by which Defendant's

5    predecessor would, in exchange for a royalty payment, license certain of Plaintiff's

6    trademarks and other intellectual property on specific categories of goods, including

7    infant and toddler apparel, bedding, and towels.

8          12.    On November 25, 2019, Defendant's parent company assigned its

9    rights and obligations to Defendant by way of a "First Amendment to License

10   Agreement." (For purposes of this Complaint, the "License Agreement" and "First

11   Amendment to License Agreement" will be referred to as the "License

12   Agreement.")

13         13.    The License Agreement spanned over a five-year initial term (and a

14   two-year renewal term).  Among other things, it contained guaranteed minimum

15   royalty payments that escalated year over year.  In 2022, the Parties decided to

16   transform the arrangement into a service provider agreement.

17         **B.    The Services Agreement**

18         14.    On August 15, 2022, Plaintiff and Defendant entered into a Services

19   Agreement for a term from the Effective Date of August 15, 2022 through

20   December 31, 2026.  It was amended on October 24, 2022.  (For purposes of this

21   Complaint, the "Services Agreement" and "First Amendment to the Services

22   Agreement" are referred to as the "Agreement").  The Agreement replaced the

23   License Agreement in its entirety.

24         15.    Under the terms of the Agreement, "[Defendant] will use best efforts

25   to promote and sell Products on [Plaintiff's] behalf," both on a website

26   (honestbabyclothing.com) and by working with Plaintiff-approved retailers.

27         16.    Section 4.2 of the Agreement grants Defendant "a non-assignable[,]

28   nontransferable[,] non-sublicensable license" to use certain of Plaintiff's trademarks

- 3 -
COMPLAINT

1  during the term of the Agreement, but only "on behalf of Honest and subject to

2  approval by Honest …."  The Agreement provides that the "license will last

3  through the Term unless the Agreement is terminated earlier, at which point the

4  license will terminate at that point."

5     17.   Section 4.2 of the Agreement also provides that Defendant "shall not

6  take any action or omit to take any action, or make or permit any use of the

7  Trademarks, that disparages Honest or any of its products or services (including any

8  Products), or otherwise dilutes, tarnishes, or impairs the value of the Trademarks

9  and the associated goodwill."

10    18.   Section 4.3 of the Agreement memorializes that Defendant has sold

11  goods on Plaintiff's behalf and that Plaintiff holds title to the goods.  Specifically, it

12  provides that Defendant "may sell Products on Honest's behalf (with Honest being

13  the seller of record) to any and all retailers: (a) to whom Honest sells its own

14  Products; and/or (b) are approved by Honest …."  Relatedly, in Section 4.10.4 of

15  the Agreement, Defendant agreed its website would "not offer for sale nor sell any

16  goods other than Products that have been approved by Honest …."

17    19.   The Agreement sets forth Defendant's obligations with respect to the

18  design and sourcing of the Products, including but not limited to the following:

19       a.    **The Design and Production Plan**: Section 3.2 requires

20         Defendant to provide a Design and Production plan to Plaintiff on a quarterly

21         basis that sets forth key data points such "the estimate of inventory purchases

22         of Products that will be needed for the upcoming 12-month period along with

23         launch plan, styles of product being produced, estimated product cost and

24         suggested selling price … for Honest approval."  Because Plaintiff has paid

25         for all Products and is the seller of record, Plaintiff needed to approve the

26         Design and Production plan to ensure that the amount and style of Products

27         purchased from suppliers would be appropriate and in line with forecasts.

28

1  Under Section 3.2, Defendant needed to keep Plaintiff aware of any issue that

2  might cause a deviation or delay in the Design and Production Plan.

3          b.      **Purchase Order Approval**: Section 7.1 requires Defendant to

4  obtain Plaintiff's approval before placing any purchase order for Products.

> Butterblu shall submit requests to Honest to place
> purchase orders (including unit quantities and total costs
> by SKU) consistent with the Design and Production Plan.
> Honest shall then provide to Butterblu written purchase
> orders for Product ("Purchase Orders") and each Purchase
> Order shall be incorporated herein by reference and
> governed exclusively by the terms set forth in the
> Purchase Order. In the event a provision in any Purchase
> Order is inconsistent with the terms and conditions of this
> Agreement, the terms of this Agreement shall control.
> Butterblu will submit Purchase Orders to Honest, using
> the Purchase Order template provided by Honest. Upon
> Honest's receipt of a Purchase Order, Honest shall
> provide its approval within 2 business days. If not
> disapproved within 2 business days, such Purchase Order
> shall be deemed approved provided the dollar amount of
> the Purchase Order is within the Business Forecast.
> Butterblu will then place the Purchase Order with the
> supplier.

        c.      **Access to Purchase Order Tracking System**: Section 3.2

provides that Defendant would "provide Honest with access to its monthly

purchase order tracking system" so that Plaintiff could have visibility into the

purchase orders placed for Products.

        d.      **Transition of Key Sales Information**: On the Effective Date of

the Agreement, Section 10.2 obligated Defendant to provide Plaintiff with

information and support "to transition accounting, operations and EDI from

Butterblu's systems to Honest's systems, including shipping and transport,

payment, EDI, product setup, websales, and customer setup."

        e.      **Sales Planning**: The Agreement requires Defendant to provide a

monthly rolling 12-month forecast with projections for sales, costs of goods,

Net Revenue, and Gross Profit Percentage for the applicable reporting period.

1        f.      **Quarterly Meetings**: The Agreement requires Defendant to
2    meet with Plaintiff at the beginning of each Contract Quarter to discuss
3    projected sales and marketing plans for the Products.

4        g.      **Approval on Pricing**: As the seller of record, Plaintiff has the
5    right to set the sale price of Products sold on the website and to retailers.  The
6    Agreement also requires Defendant to engage in "meaningful consultation in
7    relation to any changes to [Product] pricing and budget for discounts …."

8        h.      **Delivery of Goods**: In Section 5.1, Defendant agreed to "deliver
9    to Honest or its designee the specified quantity of Product conforming to the
10   requirements set forth in this Agreement at the delivery destination and by
11   the delivery date specified in a Purchase Order" with "[t]itle and risk of loss
12   or damage to the Products … pass[ing] to Honest only when the Products are
13   delivered to Honest's designated destination."

14       i.      **Trademarks**: Sections 3.4 and 4.2 require Defendant to use
15   Plaintiff's trademarks on all Products, packaging, and promotional materials
16   pursuant to Plaintiff's guidelines and subject to Plaintiff's approval, and not
17   to take any action or refrain from any action that would diminish Plaintiff's
18   standing or that of its products, its trademarks, and associated good will.

19       20.     In exchange for Defendant's services, the Agreement provides that
20   Defendant is to (1) be reimbursed for "the costs to Butterblu for finished Product,"
21   and (2) eligible for a "Base Service Fee" and "Quarterly Service Fee."

22       21.     As part of the transition from the License Agreement to the
23   Agreement, Plaintiff entered into a Bill of Sale by which Plaintiff purchased from
24   Defendant all Honest Baby Clothing® branded Products inventory, free of any liens
25   and encumbrances, owned by Defendant through the Effective Date.  The Bill of
26   Sale was executed on August 22, 2022 and thereafter Plaintiff took title to all
27   Honest Baby Clothing® Product inventory as of the Effective Date.

28

1　　22.　　The Agreement provides that "[e]ither Party will have the right to

2　immediately terminate this Agreement by giving the other Party a notice of

3　termination, without giving the other Party any right to cure, if such other Party …

4　breaches this Agreement and that breach is incapable of complete cure …."

5　　23.　　Section 16.10 of the Agreement ("Governing Law") provides that

6　"[t]his Agreement shall be governed by and construed in accordance with the laws

7　of the State of California, without regard to choice of laws principals thereof."

8　　24.　　Section 16.11 of the Agreement ("Jurisdiction") provides that "[t]he

9　parties hereby consent to the exclusive jurisdiction of the United States District

10　Court for the Central District of California and any of the courts of the State of

11　California, County of Los Angeles in any dispute arising under this Agreement …."

12　It further provides "that service of process" of any complaint "will be effective if in

13　writing and issued" in conformance with the notice provisions of the Agreement.

14　The notice requirements of the Agreement allow for e-mail or air courier service.

15　　**C.**　　**Defendant Has Materially Breached the Agreement.**

16　　　**1.**　　***Ordering Products Without or in Excess of Plaintiff's***

17　　　　***Approval***

18　　25.　　The Agreement requires Defendant to provide Plaintiff with access to

19　its Purchase Order tracking system and to obtain approval of Purchase Orders

20　before issuing them to suppliers.  These terms are material given that Plaintiff owns

21　title to the Products and reimburses Defendant for the costs of sourcing the

22　Products.  Defendant, however, never shared the Purchase Order tracking system

23　with Plaintiff.

24　　26.　　By 2023, Defendant began to order Products from suppliers without

25　seeking approval from Plaintiff or in excess of the approval granted by Plaintiff.

26　Defendant also placed orders after May 2023 that included certain intellectual

27　property after Plaintiff expressly withdrew Defendant's ability to use such

28　intellectual property.

27.   Based on current information, Plaintiff estimates that Defendant has ordered at least $16.5 million in unapproved inventory, including inventory for which either (a) Defendant did not secure approval of a Purchase Order as required by the Agreement; or (b) Defendant ordered in excess of what Plaintiff had approved in a Purchase Order.  Under the Agreement, Plaintiff has no obligation to pay for—and is entitled to a refund—for all such unapproved orders.

### 2.   *Failing to Share and Update Information*

28.   The Agreement required Defendant to share sales and other information with Plaintiff beginning on the Effective Date, as well as to update Plaintiff and third-party sellers about certain information.  Defendant, however, has failed to provide Plaintiff with the required information despite follow-up requests.  For example:

a.   On or about March 4, 2025, Plaintiff requested that Defendant provide information, including but not limited to the catalogue of active SKUs and discontinued SKUs; Amazon product identification numbers for each SKU sold on Amazon; and key dates for various retailers including when line review meetings would take place, when merchandise resets would take place, when shipments would take place, and when business would be awarded.  Defendant refused to provide this information, and has continued to fail to provide such information despite Plaintiff's repeated requests.

b.   On or about May 20, 2025, Plaintiff emailed to ask Defendant to (i) provide Plaintiff with information relating to accounting, operations, product setup, web sales, and customer setup, such as an Item Master List for all Products (including information like product specifications and dimensions, UPC codes, and MSRP), (ii) identify Plaintiff – and not Defendant – as the owner of all Products on Amazon's sales portal (called Brand Registry); (iii) provide Plaintiff with Amazon product identification numbers for each SKU sold on Amazon, as well as other product information

such as pricing, descriptions, and what Products are active or discontinued; (iv) provide current selling and discount terms for each retailer that buys the Products.  Defendant failed to furnish the required information and, to date, Defendant has failed to comply with this request.

### 3.    *Failing to Follow Plaintiff's Direction on Pricing*

29.    In or about July 2025, Plaintiff instructed Defendant to raise pricing on Products as soon as possible.  Defendant refused to do so, stating "we did not and cannot agree to a broad-based/across-the-board … increase."  Defendant also promised to provide pricing information, but failed to do so.

30.    Plaintiff reiterated that, under the terms of the Agreement, "all pricing changes require alignment and approval from [Plaintiff] prior to implementation" and requested a meeting to discuss pricing and "align on next steps before any action is taken."  Defendant refused and said it already addressed such matters by implementing its own strategy.

### 4.    *Failing to Meet Business Forecasts and Budgets*

31.    Defendant has missed business forecasts and neglected to meet with Plaintiff to adequately discuss and address shortfalls.

### 5.    *Refusing to Return Excess Fees*

32.    Plaintiff is owed substantial credits or refunds from Defendant because, to date, fees paid to Defendant have not fully accounted for write-downs or reserves that Plaintiff is permitted to take under the Agreement.  Defendant has refused to credit or return excess fees it has received.

### 6.    *Misrepresenting Information to a Key Retailer*

33.    In 2024, Plaintiff arranged for Defendant to meet with a major retailer about a line of Plaintiff-branded pet-care products.  After the meeting between Defendant and the major retailer, the retailer cancelled a 2024 launch of a Plaintiff-branded pet line.

- 9 -
COMPLAINT

34.   On information and belief, Defendant inaccurately represented during the meeting with the major retailer that Plaintiff lacked the necessary intellectual property for a branded pet line and proposed that the retailer instead purchase a private label pet line solely through Defendant.  The retailer declined.

35.   Beyond the lost opportunity to expand a relationship with a major retailer and launch a new product line, the incident diminished Plaintiff's goodwill and credibility with the retailer.

**D.   Plaintiff Has Terminated the Agreement.**

36.   On November 5, 2025, Plaintiff terminated the Agreement based on Defendant's failure to adhere to material terms of the Agreement—breaches which cannot be cured.

## CLAIMS

### COUNT 1 – BREACH OF CONTRACT, INCLUDING OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

37.   Plaintiff incorporates and relies upon paragraphs 4–5 and 11–36.

38.   Plaintiff and Defendant entered into a contract, namely the Agreement.

39.   Plaintiff has done all, or substantially all, of the significant things that the Agreement required of it or was excused from having to perform certain obligations under the Agreement.

40.   Defendant has failed to comply with multiple express and implied obligations and terms of the Agreement, including despite follow-up requests by Plaintiff in an effort to secure compliance.

41.   Plaintiff has not agreed to waive or excuse Defendant's noncompliance.

42.   Defendant's breaches were the exclusive or a substantial factor in causing harm to Plaintiff.

### COUNT 2 – UNJUST ENRICHMENT/RESTITUTION

43.   Plaintiff incorporates and relies upon paragraphs 4–5 and 11–36.

44. Defendant has received money or benefits that belong to Plaintiff and that, in equity, should be awarded or returned to Plaintiff as unjust enrichment or restitution.

## COUNT 3 – BREACH OF FIDUCIARY DUTY

45. Plaintiff incorporates and relies upon paragraphs 4–5 and 33–35.

46. When acting on behalf of Plaintiff under the agreement, Defendant was an agent of Plaintiff and owed Plaintiff a fiduciary obligation to act with the utmost good faith and in the best interest of Plaintiff.

47. On information and belief, Defendant breached its obligation to act with utmost good faith and in the best interests of Plaintiff by misstating facts about Plaintiff and/or by attempting to engage in self-dealing.

48. Defendant's conduct was a substantial factor in causing harm to Plaintiff, including in the form of a lost opportunity to launch a product line, loss of goodwill and reputation with a major retailer, and loss of goodwill and reputation with consumers attendant to a new product line.

## COUNT 4 – DECLARATORY RELIEF

49. Plaintiff incorporates and relies upon paragraphs 4–5 and 11–36.

50. The Parties currently have a controversy and dispute about their respective rights and obligations under the Agreement.

51. Plaintiff seeks a declaration of its rights under the Agreement, including, among other things, that Plaintiff validly terminated the Agreement due to one or more material breaches by Defendant and, that, whether or not Plaintiff validly terminated the Agreement, Plaintiff is owed refunds for amounts previously paid to Defendant and/or for amounts incurred in connection with orders (or portions of orders) placed by Defendant in excess of approvals.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant as to each and every count consistent with applicable law, and pursuant to only those counts so permitted, including:

      a.    Actual, compensatory, nominal, and special damages;

      b.    Attorneys' fees and costs to the extent recoverable;

      c.    Punitive damages;

      d.    Declaratory relief;

      e.    Any preliminary or other injunctive relief as may be necessary to avoid irreparable harm; and

      f.    Such other and further relief that this Court may deem fit and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Local Rule 38-1, Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: November 5, 2025          Respectfully submitted,

                            SIDLEY AUSTIN LLP

                            By: */s/ Sean A. Commons*
                                    Sean A. Commons

                            Attorneys for Plaintiff
                            The Honest Company, Inc.

COMPLAINT